**ORAL ARGUMENT NOT YET SCHEDULED**

No. 12-1433

IN THE

# United States Court of Appeals for the District of Columbia Circuit

———————

DAIMLER TRUCKS NORTH AMERICA LLC, *et al.*,

Petitioners,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,

Respondent,

NAVISTAR, INC.,

Intervenor.

———————

On Petition for Review from the United States
Environmental Protection Agency

———————

**FINAL REPLY BRIEF FOR PETITIONERS**

———————

JULIE R. DOMIKE
WILLIAM F. LANE
ALEC C. ZACAROLI
KILPATRICK TOWNSEND & STOCKTON
  LLP
Suite 900
607 Fourteenth Street, N.W.
Washington, D.C. 20005
(202) 824-1418

*Counsel for Mack Trucks, Inc. and Volvo
Group North America, LLC*

June 11, 2013

CHRISTOPHER T. HANDMAN
R. LATANE MONTAGUE
SEAN MAROTTA
KATHRYN L. LANNON
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5719

*Counsel for Daimler Trucks North
America LLC and Detroit Diesel
Corporation*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................. iii

GLOSSARY .................................................................................vi

SUMMARY OF ARGUMENT ........................................................1

ARGUMENT..................................................................................4

I.   EPA'S SUBSTANTIAL-WORK FINDINGS IN THE FINAL
     RULE ARE NOT LOGICAL OUTGROWTHS OF THE
     PROPOSED RULE...................................................................4

     A.   EPA Improperly Amended The Substantial-Work
          Regulation Without Notice And Comment .........................4

          1.   EPA Misapplies The Logical-Outgrowth Doctrine...................4

          2.   EPA's Unprecedented Invocation Of The Logical-
               Outgrowth Doctrine, If Approved By This Court,
               Would Have Grave Consequences .........................................11

          3.   EPA's Failure To Provide Notice Was Not
               Harmless...............................................................................13

     B.   Petitioners Did Not Have Adequate Notice Of EPA's
          Intent To Base Its Substantial-Work Determination On
          Navistar's Switch To SCR .....................................................15

          1.   Petitioners Did Not Have Constructive Or Actual
               Notice ....................................................................................15

          2.   EPA's Failure To Give Notice Was Not Harmless................16

II.  THERE IS NO TECHNOLOGICAL LAGGARD .....................................19

III. EPA's NCP CALCULATION DEPARTED FROM PAST
     AGENCY PRACTICE WITHOUT RATIONAL
     EXPLANATION ...................................................................23

IV.  THIS COURT SHOULD VACATE THE FINAL RULE .........................26

i

**TABLE OF CONTENTS—Continued**

Page

CONCLUSION ........................................................................................30

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page

CASES:

*Allied-Signal, Inc.* v. *NRC*,
  988 F.2d 146 (D.C. Cir. 1993) .........................................................28

*Am. Fed'n of Labor & Cong. of Indus. Orgs.* v. *Donovan*,
  757 F.2d 330 (D.C. Cir. 1985) ...........................................................9

*Am. Mining Cong.* v. *EPA*,
  907 F.2d 1179 (D.C. Cir. 1990) ...................................................17, 24

*ARCO Oil & Gas Co.* v. *FERC*,
  932 F.2d 1501 (D.C. Cir. 1991) ......................................................17

*Arizona Pub. Serv. Co.* v. *United States*,
  742 F.2d 644 (D.C. Cir. 1984) ........................................................18

*Cement Kiln Recycling Coal.* v. *EPA*,
  255 F.3d 855 (D.C. Cir. 2001) ........................................................27

\* *Christensen* v. *Harris County*,
  529 U.S. 576 (2000)...............................................................10, 11

*City of Waukesha* v. *EPA*
  320 F.3d 228 (D.C. Cir. 2003) ........................................................13

*Corridor H Alternatives, Inc.* v. *Slater*,
  166 F.3d 368 (D.C. Cir. 1999) ..........................................................7

\* *CSX Transp., Inc.* v. *STB*,
  584 F.3d 1076 (D.C. Cir. 2009) ...............................................2, 6, 12

*Dillmon* v. *NTSB*,
  588 F.3d 1085 (D.C. Cir. 2009) ......................................................23

*Donnelly* v. *FAA*,
  411 F.3d 267 (D.C. Cir. 2005) ........................................................19

\* Authorities upon which we chiefly rely are marked with asterisks.

iii

## TABLE OF AUTHORITIES—Continued

Page

*Drake* v. *FAA*,
291 F.3d 59 (D.C. Cir. 2002) ....................................................................10

*EME Homer City Generation, L.P.* v. *EPA*,
696 F.3d 7 (D.C. Cir. 2012) ................................................................28, 29

\* *Envtl. Integrity Project* v. *EPA*,
425 F.3d 992 (D.C. Cir. 2005) .........................................................7

\* *Fox Television Stations, Inc.* v. *FCC*,
280 F.3d 1027 (D.C. Cir. 2002) ........................................................28, 29

*Heartland Reg'l Med. Ctr.* v. *Sebelius*,
566 F.3d 193 (D.C. Cir. 2009) .................................................................28

*Horsehead Res. Dev. Co.* v. *Browner*,
16 F.3d 1246 (D.C. Cir. 1994) .................................................................11

\* *Int'l Union, United Mine Workers of Am.* v.
*Mine Safety & Health Admin.*,
407 F.3d 1250 (D.C. Cir. 2005) .....................................................11

*James Madison Ltd.* v. *Ludwig*,
82 F.3d 1085 (D.C. Cir. 1996) .................................................................18

*Jicarilla Apache Nation* v. *U.S. Dep't of the Interior*,
613 F.3d 1112 (D.C. Cir. 2010) ...........................................................13, 18

\* *Mack Trucks, Inc.* v. *EPA*,
682 F.3d 87 (D.C. Cir. 2012) .................................................8, 20, 21, 22, 29

*MCI Telecomms. Corp.* v. *FCC*,
57 F.3d 1136 (D.C. Cir. 1995) .................................................................16

*McLouth Steel Prods. Corp.* v. *Thomas*,
838 F.2d 1317 (D.C. Cir. 1988) .................................................................14

*N.E. Md. Waste Disposal Auth.* v. *EPA*,
358 F.3d 936 (D.C. Cir. 2004) ...................................................................2

## TABLE OF AUTHORITIES—Continued

Page

*Nat'l Mining Ass'n* v. *U.S. Army Corps of Eng'rs*,
  145 F.3d 1399 (D.C. Cir. 1998) .......................................27

\* *Pub. Employees Retirement Sys.* v. *Betts*,
  492 U.S. 158 (1989).........................................................7

*Scandinavian Satellite Sys., AS* v. *Prime TV, Ltd.*,
  291 F.3d 839 (D.C. Cir. 2002) .........................................9

*SEC* v. *Chenery Corp.*,
  332 U.S. 194 (1947)........................................................20

\* *Shell Oil Co.* v. *EPA*,
  950 F.2d 751 (D.C. Cir. 1991) ...........................12, 13, 14

*Sprint Corp.* v. *FCC*,
  315 F.3d 369 (D.C. Cir. 2005) .......................................14

\* *Sugar Cane Growers Coop.* v. *Veneman*,
  289 F.3d 89 (D.C. Cir. 2002) .........................................13

*United States* v. *Mead Corp.*,
  533 U.S. 218 (2001).......................................................12

STATUTE:

5 U.S.C. § 553(b)(3) .........................................................8

REGULATIONS:

40 C.F.R. § 86.1103-87(a)(1) (2012)...................................5

50 Fed. Reg. 9204 (Mar. 6, 1985) ......................................19

50 Fed. Reg. 35,374 (Aug. 30, 1985) ............................22, 24

66 Fed. Reg. 5002 (Jan. 18, 2001)........................................8

67 Fed. Reg. 51,464 (Aug. 8, 2002) ..................................8, 9

## GLOSSARY

APA:            Administrative Procedure Act

EGR:            Exhaust Gas Recirculation

EPA:            Environmental Protection Agency

g/bhp-hr:       Grams per Brake Horsepower-Hour

NCP:            Nonconformance Penalty

$NO_x$:         Nitrogen Oxides

SCR:            Selective Catalytic Reduction

IN THE

# United States Court of Appeals
# for the District of Columbia Circuit

No. 12-1433

DAIMLER TRUCKS NORTH AMERICA LLC, *et al.*,

Petitioners,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,

Respondent,

NAVISTAR, INC.,

Intervenor.

On Petition for Review from the United States
Environmental Protection Agency

**FINAL REPLY BRIEF FOR PETITIONERS**

**SUMMARY OF ARGUMENT**

Until EPA issued its Final Rule, the plain language of its substantial-work

regulation said that EPA should consider what work "will be required" in the

future.  After the Final Rule, the regulation now directs the Agency to consider the

exact opposite and focus on what work "was required" in the past.  On brief, EPA

admits that its proposed Final Rule "did not include revisions to [the] regulatory

language for the 'substantial work' criterion" that ultimately appeared in its Final Rule. EPA Br. 24. EPA agrees, therefore, that the Final Rule's substantial-work determination must stand or fall depending on whether it was a logical outgrowth of the proposed rule. EPA Br. 22.

But EPA then misapplies the logical-outgrowth doctrine. The question under that doctrine is whether " 'interested parties should have anticipated that *the change* was possible, and thus reasonably should have filed their comments on the subject during the notice-and-comment period.' " *CSX Transp., Inc.* v. *STB*, 584 F.3d 1076, 1080 (D.C. Cir. 2009) (quoting *N.E. Md. Waste Disposal Auth.* v. *EPA*, 358 F.3d 936, 952 (D.C. Cir. 2004)) (emphasis added). "The change" in this case was EPA revising the text of its substantial-work regulation. EPA never explains—nor could it—how interested parties had notice of *that change* so that they could comment on it.

Instead, EPA and Navistar go on about how Petitioners (supposedly) were aware that the Agency had (supposedly) long interpreted its substantial-work regulation to consider whether substantial work "was required." But none of that is remotely relevant (let alone true). For even if EPA had consistently interpreted the phrase "will be required" to mean "was required"—and even if anyone knew about it—that would just mean the Agency had been consistently *mis*interpreting its own regulation. That was precisely what Petitioners argued in their comments:

2

that EPA was purporting to find substantial work under a standard that conflicted

with the regulation's plain language.  Rather than try to harmonize its supposedly

long-standing interpretation with the text, EPA took a shortcut and simply

*amended* the regulation to square with its view and then proceeded to find NCPs

warranted under that unforeseen new regulation.  Neither the APA nor this Court's

precedents tolerate that sleight of hand.

    The same is true of EPA's finding that Navistar is a technological laggard.

EPA concedes that it has previously held that a manufacturer is not a technological

laggard if complying with a new emission standard merely requires transferring an

established technology from another application.  EPA Br. 40.  EPA also concedes

that it has previously held that a manufacturer is not a technological laggard if it

put off complying with a standard to score an economic advantage.  EPA Br. 51.

But EPA never reconciles these past holdings with its finding here that Navistar is

a technological laggard.  That is fatal because EPA admits Navistar was able to

achieve 0.20 g/bhp-hr $NO_x$ compliance by purchasing SCR systems from a

business partner and made a deliberate business choice to forgo SCR.

    EPA is also hard-pressed to rationalize the artificially low penalty amount it

selected for Navistar's NCP.  In EPA's view, it properly honored its past practices

because it used an NCP formula that had all the same symbols as EPA's previous

NCP rulemakings.  But as we pointed out—and EPA never rebuts—although EPA

used the same *symbols* in its NCP formula, it radically re-defined what one of them stood for. Having done so, EPA was required to give a rational explanation for why it did not adjust the other variables in the NCP formula to ensure that the formula still did what it had always done: account for the full costs of compliance. EPA never did that.

All of these errors are so fundamental that the Final Rule must be vacated, not just remanded. That is the ordinary course this Court follows when it finds agency action unlawful, and nothing EPA or Navistar says warrants a different result. Indeed, EPA's counsel admitted at oral argument in *Mack Trucks* that the correct remedy for the lack of notice and comment there "would be to vacate the rule." *Mack Trucks* Oral Arg. Tr. 21. Given that Navistar considers this "the same case again" as *Mack Trucks*, Navistar Br. 1, there is no reason why EPA's answer there should not control here as well. The Final Rule should be vacated.

## ARGUMENT

## I.    EPA'S SUBSTANTIAL-WORK FINDINGS IN THE FINAL RULE ARE NOT LOGICAL OUTGROWTHS OF THE PROPOSED RULE.

### A.    EPA Improperly Amended The Substantial-Work Regulation Without Notice And Comment.

#### 1.    EPA Misunderstands The Logical-Outgrowth Doctrine.

a. In its proposed rule, EPA found that the substantial-work criterion was satisfied because "substantial work *was required* to meet the [0.20 g/bhp-hr]

4

standard." J.A. 3 [77 FR 4738] (emphasis added). EPA makes much ado about Petitioners having challenged that finding in their comments. EPA Br. 26. But EPA overlooks the grounds on which Petitioners challenged it: because it conflicted with the plain language of the Agency's own regulation. In their comments, Petitioners explained that it's irrelevant whether substantial work "was required" because EPA's own regulations—at that time—expressly provided that an NCP is warranted only when "substantial work *will be required*." 40 C.F.R. § 86.1103-87(a)(1) (2012) (emphasis added); *see* J.A. 279 [Cummins cmt. 3] ("In the Proposed Rule, EPA makes *no* finding that substantial work 'will be required' to achieve the NOx standard, as its regulations mandate."); *id.* at 216; 236-237 [DTNA cmt. 5; Volvo cmt. 6-7]. Commenters emphasized that the "difference in verb tense" between the test that EPA was purporting to apply and the test that its regulations demanded was "significant and determinative of the regulation's meaning." J.A. 279 [Cummins cmt. 3].

Thus, as EPA prepared to issue a Final Rule, it faced a specific challenge to a specific proposed finding. If EPA was going to pursue its proposal that an NCP was warranted because "substantial work was required" *in the past*, then it would need to offer some rational explanation for how that interpretation could be harmonized with a regulation that, on its face, required the Agency to examine whether such work "will be required" *in the future*.

EPA never offered that explanation.  Nowhere in the Final Rule did EPA explain how "was" is synonymous with "will be."  And nowhere in the Final Rule did EPA explain why the various Supreme Court cases cited by commenters—all of which make clear that the "use of a verb tense is significant" when construing statutes and, by extension, regulations—are not controlling in this instance.  J.A. 279 [Cummins cmt. 3].  Instead, EPA took a more expedient approach:  It *amended* the regulation to reverse-engineer a new standard that aligned with the EPA's proposed finding.

The question in this case is whether Petitioners "should have anticipated that th[at] change was possible."  *CSX Transp.*, 584 F.3d at 1080 (citation omitted).  The answer is no.  After all, EPA uttered just a single sentence regarding substantial work in the proposed Final Rule:  "It is * * * logical to conclude that the standard is more difficult to meet and that substantial work was required to meet the emission standard."  J.A. 3 [77 FR 4738].  That snippet confirms that EPA was purporting to do nothing more than apply its then-existing regulation to the facts of this case—albeit in a way that demonstrably conflicted with the plain language of the regulation.  But interested parties could not have anticipated that EPA would rewrite the very regulation it was purporting to apply, and that they "reasonably should have filed" comments opposing EPA's unforeseen revision.  *CSX Transp.*, 584 F.3d at 1080.  EPA thus did precisely what this Court has

condemned it for doing in the past: "pull[ing] a surprise switcheroo on regulated entities." *Envtl. Integrity Project* v. *EPA*, 425 F.3d 992, 996 (D.C. Cir. 2005).

b. EPA and Navistar ignore that key change. Instead, they each devote several thousand words to proving points that don't matter, most having to do with variations on "notice." But the key question under the logical-outgrowth doctrine is "notice of what." At best, EPA and Navistar have shown that perhaps some discerning members of the public may have known that EPA had consistently misinterpreted the regulatory phrase "will be required" to mean "was required." But nothing in the past—and certainty nothing in the proposed Final Rule—would have suggested that EPA was going to take this opportunity to *amend* the regulation's text to remedy that interpretive flaw.

To review the bidding: Petitioners in their comments challenged EPA's substantial-work interpretation as conflicting with " 'the regulation's plain language.' " *Corridor H Alternatives, Inc.* v. *Slater*, 166 F.3d 368, 373 (D.C. Cir. 1999) (citation omitted). And it is well settled that "[e]ven contemporaneous and longstanding agency interpretations must fall to the extent they conflict with" the regulatory text. *Pub. Employees Retirement Sys.* v. *Betts*, 492 U.S. 158, 171 (1989). Thus, no matter the vintage of EPA's interpretation—and no matter how

well known it was—Petitioners had every right to argue that EPA could not apply a regulation in a way that conflicted with its plain language.[1]

The important point is that EPA never explains how Petitioners had actual notice of what really counts:  EPA's decision to rewrite its substantial-work regulation.  This Court explained in *Mack Trucks* that actual notice, same as constructive notice, requires Petitioners to have been aware of  " 'the terms or substance of the proposed rule or a description of the subjects and issues involved.' "  *Mack Trucks, Inc.* v. *EPA*, 682 F.3d 87, 91 n.4 (D.C. Cir. 2012) (quoting 5 U.S.C. § 553(b)(3)).  The documents that EPA and Navistar point to outside the proposed Final Rule provide no notice that EPA was going to revise the substantial-work standard.

---

[1] Although the age of EPA's "substantial work" interpretation is irrelevant, it is nevertheless worth setting the record straight.  The documents that EPA and Navistar cite for EPA's supposedly long-standing interpretation show just the opposite.  The Phase VI Rule states that EPA "continue[s] to believe such new technologies [requiring substantial work] *will be used* by a number of engine manufacturers."  67 Fed. Reg. 51,464, 51,466 (Aug. 8, 2002) (emphasis added). The February 2010 letter to manufacturers, similarly, states "substantial work *was likely required*" and that NCPs would be *in*appropriate.  J.A. 448 [Feb. 2010 Letter at 1] (emphasis added).  And in the 2001 Final Rule establishing the 0.20 g/bhp-hr $NO_x$ standard, although EPA predicted that "substantial work will be required" to meet the standard, it ultimately declined to promulgate NCPs and resolved to revisit the issue as manufacturers developed their compliance strategies.  66 Fed. Reg. 5002, 5009 (Jan. 18, 2001).  In each, then, EPA either retained the future tense used in the codified regulation—as in the Phase VI Rule and the 2001 Final Rule—or noted—as in the February 2010 letter to manufacturers—the fact substantial work was required as a factor to suggest that NCPs were *not* required.

8

For the same reasons, it is irrelevant that Detroit Diesel and Mack Trucks participated in the Phase VI Rule and may (or may not) have known that EPA has been hewing to a demonstrably wrong interpretation for several years. EPA Br. 27-29. But in any event, Detroit Diesel and Mack Trucks are just two of the Petitioners in this proceeding; the other two—Daimler Trucks and Volvo Group— did *not* participate in the Phase VI rulemaking. *See* 67 Fed. Reg. at 51,466 n.2. That alone dooms this twist on the Agency's notice theory. *See Am. Fed'n of Labor & Cong. of Indus. Orgs.* v. *Donovan*, 757 F.2d 330, 340 (D.C. Cir. 1985). And it is no answer to say—as EPA does (Br. 28-29)—that Daimler Trucks and Volvo Group share common ownership with Detroit Diesel and Mack Trucks, respectively. That is because this Court has held that it is a "basic principle that 'ownership, alone, of capital stock in one corporation by another, does not create an identity of corporate interest.' " *Scandinavian Satellite Sys., AS* v. *Prime TV, Ltd.*, 291 F.3d 839, 846 (D.C. Cir. 2002) (citation omitted).

c. In another variation on notice, EPA and Navistar stress that Petitioners in their comments and "brief in the *Mack Trucks* case * * * made the same 'verb tense' argument [they] make[] here." EPA Br. 25; *see also* Navistar Br. 26-27. Yes, we did. And we explained why in our *Mack Trucks* brief: "[I]n order for this Court to defer to the agency's interpretation, 'the agency's reading of its regulations must be fairly supported by the text of the regulation itself * * *.' "

9

Petitioners' Br. 43, *Mack Trucks*, No. 12-1077 (quoting *Drake* v. *FAA*, 291 F.3d 59, 68 (D.C. Cir. 2002)).  An agency interpretation that reads "will be" to mean "was" is just as objectively wrong as the interpretation the Supreme Court rejected in *Christensen* v. *Harris County*, which read "may" to mean "must."  529 U.S. 576, 588 (2000).  Petitioners made that basic point again in their comments, hoping to convince EPA that its proposed finding did indeed conflict with the regulation's text.  J.A. 279, 216, 236-237 [Cummins cmt. 3; DTNA cmt. 5; Volvo cmt. 6-7].  What Petitioners never imagined they would need to do was tell EPA that it should not *amend* that very regulation.[2]

---

[2] In the same vein, we were surprised to see that EPA thinks it "important" that "Daimler has not actually asked the Court to rule on whether EPA's longstanding interpretation of the 'substantial work' criterion, as reflected in that revision, is a permissible construction of EPA's *prior* regulation to which EPA would be entitled to deference under *Auer*."  EPA Br. 22 (emphasis added).  Precisely because EPA promulgated a *new* regulation and purported to find substantial-work satisfied under that *new* regulation, Petitioners did not challenge an agency interpretation of a superseded "prior regulation."  To the extent EPA is suggesting that Petitioners have never contested whether the agency's interpretation of that "prior regulation" would have been entitled to *Auer* deference, EPA is incorrect.  As we have explained, *supra* 5-8, our brief in *Mack Trucks*, Petitioners' comments on the proposed Final Rule, and the three pages we spent in our opening brief  all argued that EPA's proposed application of the then-existing regulation violated that regulation's plain language and therefore would warrant no deference.  Opening Br. 25-28.  Because EPA itself never attempted to defend its interpretation under that old regulation, we had no opportunity to bring that challenge before this Court.  Instead, the question now facing this Court is whether EPA improperly pulled the rug out from the Petitioners by amending—without warning—the regulation's text so that it would now jibe with EPA's preferred interpretation.

In any event, this Court has consistently held that interested parties are not charged with notice of an agency's final rule simply because they submitted comments that touched on topics addressed in the final rule. For instance, this Court has found an agency final rule not a logical outgrowth of the one proposed where some commenters remarked on the possibility the agency might set a maximum permissible cap on a certain output, but there was "no indication by the [agency] that [the agency] was intending to do so." *Int'l Union, United Mine Workers of Am.* v. *Mine Safety & Health Admin.*, 407 F.3d 1250, 1260 (D.C. Cir. 2005); *see also Horsehead Res. Dev. Co.* v. *Browner*, 16 F.3d 1246, 1267-68 (D.C. Cir. 1994) (no logical outgrowth where commenters remarked on elements of the final rule, but did not anticipate how those elements would be combined).

### 2.  EPA's Unprecedented Invocation Of The Logical-Outgrowth Doctrine, If Approved By This Court, Would Have Grave Consequences.

If this Court were to ratify EPA's gambit here, it would invite all sorts of mischief. As the Supreme Court has explained, the reason a federal court does not "defer to the agency's position" when its regulation unambiguously says the opposite is because doing so would "permit the agency, under the guise of interpreting a regulation, to create *de facto* a new regulation" without the normal notice-and-comment process. *Christensen*, 529 U.S. at 588. Here, it is even worse. EPA didn't just "create *de facto* a new regulation"; it purported to create *in*

11

*fact* a new regulation.  But EPA evaded notice and comment procedures all the

same by smuggling its new regulation into the Final Rule without offering the

public any hint it would promulgate that regulation.  More troubling still, EPA's

interpretation of substantial work would henceforth be entitled to full *Chevron*

deference—rather than bare *Auer* deference—because it is now enshrined in a

formal regulation.  *See United States* v. *Mead Corp.*, 533 U.S. 218, 230-231

(2001).  The reason courts afford greater deference to agency interpretations set

forth in regulations is because they have been subjected to notice and public

comment.  *Id.*  EPA's approach, if adopted by this Court, would thus threaten to

upset settled principles of administrative law.

     The problems would not stop there.  Under EPA's notice theory, any time a

party argues that an agency has misapplied its own regulations in a proposed rule,

the agency could merely revise its regulation to accommodate its interpretation.

To counter that strategy, a party would not only have to explain why the agency's

proposed interpretation conflicts with the existing regulation's text; it also would

have to preemptively explain why the agency should not promulgate an amended

regulation.  That would not only get things backwards; it would also conflict with

this Court's settled view that there can be no "logical outgrowth" where "the

proposed rule gave no indication that the agency was considering a different

approach."  *CSX Transp.*, 584 F.3d at 1081.  Here, then, EPA's "unexpressed

intention cannot convert a final rule into a 'logical outgrowth' that the public should have anticipated."  *Shell Oil* v. *EPA*, 950 F.2d 741, 751 (D.C. Cir 1991).

### 3.    EPA's Failure To Provide Notice Was Not Harmless.

EPA and Navistar argue that the Agency's oversights were harmless because even if EPA had given notice, Petitioners' additional arguments could not have dissuaded EPA from amending the substantial-work regulation.  EPA Br. 31-33; Navistar Br. 27-29.  EPA, in particular, accuses us of ignoring *City of Waukesha* v. *EPA*'s statement that to prove harmful error, a petitioner must point to additional comments "that could have invalidated the rationale for the revised rule."  320 F.3d 228, 246 (D.C. Cir. 2003).  But this Court has never interpreted *City of Waukesha* the way EPA does.  If *City of Waukesha* truly meant the additional comments must have changed the agency's mind, an agency's litigation counsel would always assert that additional comments would have been unavailing.  Such a standard, however, "would * * * virtually repeal section 553's requirements."  *Sugar Cane Growers Coop.* v. *Veneman*, 289 F.3d 89, 96 (D.C. Cir. 2002).

That is why this Court has taken a much different approach.  It has emphasized that "the harmless error rule is 'not * * * a particularly onerous requirement.' "  *Jicarilla Apache Nation* v. *U.S. Dep't of the Interior*, 613 F.3d 1112, 1121 (D.C. Cir. 2010) (citation omitted).  It is even less so in a case such as this, where EPA has "entirely failed to comply with notice-and-comment

requirements, and [EPA] has offered no persuasive evidence that possible objections to its final rules have been given sufficient consideration." *Shell Oil*, 950 F.2d at 752. Indeed, this Court has held that where an agency offers no indication of its planned final rule in the notice of proposed rulemaking, there is no requirement that a petitioner offer additional arguments that it would have made if notice had been properly given. *Id.*

Regardless of whether Petitioners were required to offer additional arguments, they did. Opening Br. 33-34; *see Sprint Corp.* v. *FCC*, 315 F.3d 369, 377 (D.C. Cir. 2005) ("[A]lthough a showing of actual prejudice is not required under the prejudicial error rule, Sprint has made a colorable claim that it would have more thoroughly presented its arguments had it known that the Commission was contemplating a rulemaking."). And although EPA's litigating counsel dismisses both of them out of hand, EPA Br. 32-33, this Court "cannot say with certainty whether [Petitioners'] comments would have had some effect if they had been considered when the issue was open." *McLouth Steel Prods. Corp.* v. *Thomas*, 838 F.2d 1317, 1324 (D.C. Cir. 1988).

Indeed, EPA's brief confirms that Petitioners' comments would have had considerable force. As EPA repeatedly emphasizes, new emissions standards under the Clean Air Act are supposed to be "technology-forcing"—they require manufacturers to develop new technology to achieve their ambitious limits. EPA

14

Br. 2, 3, 4, 5, 34, 39.  Thus, by definition, a new emissions standard will always require substantial work when it is first promulgated by EPA.  Yet if that was all the substantial-work criterion demanded, then the requirement would be met in *every case*, making it no criterion at all.  Petitioners' comments identified that flaw in EPA's logic.  J.A. 212 [DTNA cmt. 5].   They also explained why construing substantial work to mean just what the regulation used to say—that EPA must evaluate what work "will be required" going forward—added a meaningful limitation on the availability of NCPs.  *Id*.  Even on brief, EPA cannot explain how its interpretation of the substantial-work criterion does not render it surplusage.  EPA's error was not harmless.

### B.    Petitioners Did Not Have Adequate Notice Of EPA's Intent To Base Its Substantial-Work Determination On The Work Needed For Navistar To Switch To SCR.

#### 1.    Petitioners Did Not Have Constructive Or Actual Notice.

Petitioners similarly had no notice of the alternative rationale offered by EPA in the Final Rule:  that Navistar will have to engage in substantial work in the future to implement its late-breaking switch to SCR technology, a switch Navistar announced after the Final Rule's comment period closed in April 2012.  Opening Br. 35.  EPA and Navistar do not even attempt to identify any notice in the proposed Final Rule itself.  *See* EPA Br. 36; Navistar Br. 29-30.  Instead, both

15

point to letters EPA sent Petitioners rejecting their requests to stay the Interim

Final Rule. *Id.*

Those letters, however, do not give the notice that EPA needed to give. J.A.

424-447 [DTNA Stay Letter; Volvo Stay Letter]. As the Agency admits, EPA Br.

36, EPA only discussed Navistar's potential switch to SCR while explaining why

Navistar was a technological laggard. J.A. 427, 441 [DTNA Stay Letter 4; Volvo

Stay Letter 6]. Neither EPA nor Navistar explains how Petitioners could have

notice of EPA's *substantial-work* finding in the *Final Rule* from a letter purporting

to explain EPA's *technological-laggard* finding in the *Interim Final Rule*. Nor can

they. After all, "this court has made it clear that an agency may not turn the

provision of notice into a bureaucratic game of hide and seek." *MCI Telecomms.*

*Corp.* v. *FCC*, 57 F.3d 1136, 1142 (D.C. Cir. 1995). Petitioners did not have

notice of EPA's alternative SCR-based substantial work finding.

## 2.    EPA's Failure To Give Notice Was Not Harmless.

EPA and Navistar once again claim that EPA's failure to give notice was

harmless. EPA Br. 36-39; Navistar Br. 30-31. They are wrong once again. EPA

first asserts that any error was harmless because it actually considered Petitioners'

supplemental comments. EPA Br. 37. But by "considered," EPA means

"summarily dismissed." It is not enough for EPA to simply assert that those

comments "did not contain any new information that would have changed our

conclusions." J.A. 120 [Comment Response 82]. EPA was required to respond to Petitioners' comments in a way so that this Court can be assured that EPA had a rational basis for rejecting them. *See Am. Mining Cong.* v. *EPA*, 907 F.2d 1179, 1187-88 (D.C. Cir. 1990). *Ipse dixit* doesn't count. *See ARCO Oil & Gas Co.* v. *FERC*, 932 F.2d 1501, 1503 (D.C. Cir. 1991).

EPA next claims that its failure to specifically address Petitioners' additional evidence is of no moment because EPA essentially responded to that evidence in its comment responses. EPA Br. 37-38 (citing J.A. 48-51 [Comment Response 10-13]). But EPA's comment responses said just the opposite: that Petitioners' supplemental comments "are generally not explicitly addressed" in those responses. J.A. 120 [*id.* 82]. Moreover, the fact that EPA responded generally to some evidence regarding the work Navistar would need to do to shift to SCR says nothing about the additional evidence Petitioners promptly submitted after Navistar announced its switch. There is a world of difference between Navistar's *competitors* claiming that Navistar can easily make a change because it uses SCR in Brazil, *see* J.A. 49 [Comment Response 11], and *Navistar itself* boasting that Navistar can easily make a change because it uses SCR in Brazil. J.A. 334 [DTNA July cmt. 2]. But it is a difference EPA never addressed because it only "summarily" considered Petitioners' additional evidence. J.A. 120 [Comment Response 82].

For its part, Navistar offers two additional reasons why EPA's lack of notice was harmless. First, Navistar claims there is an *additional* alternative reason why substantial work was necessary: Navistar would have needed to do substantial work in the future to make its EGR-only designs compliant. Navistar Br. 31-32. But EPA has never suggested this supposedly alternative finding, and an intervenor such as Navistar cannot offer a "*post hoc* rationalization of [EPA's] decision" any more than EPA can. *Arizona Pub. Serv. Co.* v. *United States*, 742 F.2d 644, 651 (D.C. Cir. 1984). Second, Navistar cites various extra-record filings appended to its brief, which, it assures the Court, show that it must engage in substantial work to adapt its engines for SCR. Navistar Br. 30-31. Besides improperly injecting additional evidence at the petition-for-review stage, *see James Madison Ltd.* v. *Ludwig*, 82 F.3d 1085, 1095 (D.C. Cir. 1996), Navistar's arguments are "nothing more than merits arguments disguised as a discussion of harmless error." *Jicarilla Apache Nation*, 613 F.3d at 1121.

In any event, the extra-record documents Navistar cites are irrelevant. They concern the work required to redesign an SCR system from the ground up—something Petitioners already did years ago at considerable expense—not the work required to integrate a preexisting compliant SCR system into existing truck designs—which is all Navistar need do now. *See* Navistar Br. ADD121. That said, Navistar's extra-record materials are notable for one reason: They are

18

precisely the sort of evidence that could have been developed and would have been scrutinized had EPA allowed for an additional round of comment.

## II.     THERE IS NO TECHNOLOGICAL LAGGARD.

EPA acknowledges that when "compliance with a standard * * * involve[s] merely the transference of technology from a similar application," a technological laggard does not exist.  EPA Br. 40-41 (quoting 50 Fed. Reg. 9204, 9206 (Mar. 6, 1985)).  EPA also admits that Navistar's general counsel had called SCR "off-the-shelf technology."  EPA Br. 41 (quoting J.A. 402 [NCP Hearing Tr. 44]).  It nevertheless insists that Navistar's use of SCR cannot be "merely transference of technology from a similar application" because SCR "must be carefully incorporated into a manufacturer's engine and vehicle designs and thoroughly tested in those applications."  EPA Br. 42.

The second half of that sentence is true.  It's also a non sequitur.  *Every* technology, even technologies that can be "plucked from one engine and dropped into another," *id.*, must be carefully incorporated into an engine and thoroughly tested.  If every technology that requires some modification of existing designs and some testing before implementation is not a "mere transference," then it is hard to see how EPA's "mere transference" standard can ever preclude the Agency from finding a technological laggard.  *Cf. Donnelly* v. *FAA*, 411 F.3d 267, 271 (D.C. Cir. 2005) (noting the preference against surplusage).  *Any* manufacturer can make

19

reckless business choices and, when those choices lead the company to the brink of being forced out of the market, suddenly change tack and declare that it is a technological laggard because it cannot comply before its "day of reckoning" comes. *Mack Trucks*, 682 F.3d at 89.

The bigger problem, however, is that EPA's Final Rule never attempted to reconcile the "mere transference" standard with Navistar's individual facts. Even though Petitioners emphasized the transference point, J.A. 217 [DTNA Comment 6], EPA never addressed it in the Final Rule or the response to comments. Therefore, even if EPA's litigation counsel can reconcile Navistar's circumstances with the "mere transference" standard, the Agency's failure to do that on the record dooms the Final Rule. *See SEC* v. *Chenery Corp.*, 332 U.S. 194, 196 (1947).

EPA and Navistar's other response is to emphasize—repeatedly—that Navistar was entitled to attempt to comply with the 0.20 g/bhp-hr $NO_x$ standard through EGR only. EPA Br. 42-44; Navistar Br. 35-36. We don't disagree. But what *EPA* could not do, once Navistar's choices proved to be poor ones, was upend its long-standing regulations to bail out Navistar. Opening Br. 39-41.

EPA and Navistar's argument to the contrary—that our position would forever squelch innovation in emissions-control technology—is built on a false dichotomy: Either Navistar could have attempted to make EGR work until the last possible moment or Navistar had to pursue SCR technology exclusively. But

Navistar's choices were not so binary, as Cummins' experience proves. Cummins, like Navistar, initially attempted to comply with the 0.20 g/bhp-hr $NO_x$ standard using only EGR. J.A. 283 [Cummins cmt. 7]. Then, in 2008, Cummins elected to switch to SCR for its engines and successfully did so without needing NCPs. *Id.*

Navistar could have done the same. In fact, Navistar had even more leeway than Cummins, thanks to Navistar's decision to stockpile emissions credits and the fact that SCR technology had advanced considerably to become—by Navistar's own admission—an off-the-shelf technology by 2010. Opening Br. 11-12. But Navistar did not. Instead, it "bet on finding a way to make [EGR] a feasible and compliant technology before its finite supply of credits ran out." *Mack Trucks*, 682 F.3d at 89. That bet was just that: an economic risk. It wasn't compelled by technological necessity, and it wasn't due to any engineering hurdles Navistar faced.

Indeed, Navistar's experience with SCR suggests it was able to make at least some models compliant and bring them to market with SCR in just five months using Cummins' engines. Navistar Br. 11. Moreover, Navistar could have even completed its projected 22-month program to develop a proprietary SCR system, J.A. 314 [Navistar cmt. 17], without relying on NCPs. After all, Navistar was able to use credits to introduce engines for over *two years* after the deadline. *Mack Trucks*, 682 F.3d at 89 & n.3. In short, Navistar's conversion to SCR could have

21

been done while Navistar still had emissions credits to spare, but Navistar—for economic, not technological reasons—chose otherwise. Opening Br. 11-12. Because NCPs are intended to be a "temporary alternative," 50 Fed. Reg. 35,374, 35,374 (Aug. 30, 1985), not a perpetual license to exceed emissions standards until a technology can be made to work, EPA's technological-laggard finding wilts under arbitrary-and-capricious review.

That is precisely the point this Court emphasized in *Mack Trucks* when it observed that "NCPs are not designed to bail out manufacturers that voluntarily chose, for whatever reason, to not adopt an existing, compliant technology." 682 F.3d at 95. EPA spends considerable time trying to explain why the statement the Court cited was "aimed at those types of situations where a manufacturer who is technologically capable of producing compliant engines would choose not to comply." EPA Br. 51. Perhaps. But then that is precisely this case. Navistar was technologically capable of producing 0.20 g/bhp-hr SCR engines, as even EPA admits. EPA Br. 42 (quoting J.A. 22 [77 FR 54,391]). Yet to secure an economic advantage, Navistar chose not to. Opening Br. 12. The Final Rule should be vacated.

III.   **EPA's NCP CALCULATION DEPARTED FROM PAST AGENCY PRACTICE WITHOUT RATIONAL EXPLANATION.**

The Final Rule should also be vacated because EPA still has not provided an "adequate explanation for its departure" from its past practice of basing NCP levels on the entire costs compliant manufacturers incurred to go from the previous standard to the new one. *See Dillmon* v. *NTSB*, 588 F.3d 1085, 1089-90 (D.C. Cir. 2009). Instead, EPA insists that its NCP calculation was appropriate because it used some of the same parameters that it always has. EPA Br. 52-54. But as we pointed out, although most of the variables have remained the same in the NCP formula, one of its core components—the upper limit—has been redefined. Opening Br. 46. A formula is not truly "the same" if one of its key components has been altered.

EPA's response is that Petitioners all agreed that the upper-limit component of the formula should be redefined for this particular rule. EPA Br. 54. Yes, they did. But they *also* argued that having redefined the upper-limit for this NCP, EPA had to adjust the other components of the NCP formula so that the formula continued to capture what it had always captured: *all* costs of compliance. J.A. 222-223 [DTNA cmt. 11-12]. EPA was therefore required to justify why *not* modifying the formula to continue to account for full costs of compliance was

23

rational. *See Am. Mining Cong.*, 907 F.2d at 1191. EPA never did. Opening Br. 46-48.[3]

On brief, EPA argues that basing the NCP on the costs of compliance between 0.5 g/bhp-hr and 0.2 g/bhp-hr is logical because the competition in the marketplace is only between engines emitting up to 0.5 g/bhp-hr and 0.2 g/bhp-hr. EPA Br. 55-56. Not quite. The competition in the marketplace is between *EGR* engines emitting up to 0.5 g/bhp-hr and *SCR* engines emitting up to 0.2 g/bhp-hr. Thus, to capture the full picture of the competition in the marketplace, EPA had to consider the fixed hardware and research and development costs of adding an SCR system to Navistar's engines. Opening Br. 9 (quoting 50 Fed. Reg. at 35,381-82). But EPA—by its own admission—never did. J.A. 8 [77 FR 4743].

EPA dismisses that failure as harmless by arguing that had the Agency considered the full costs of compliance as Petitioners suggested, it would have resulted in a lower NCP amount. EPA Br. 57-58 (citing J.A. 184, 187 [Final TSD 59, 62]). But EPA's analysis, J.A. 184-188 [Final TSD 59-63], relies on two flawed assumptions. First, EPA's analysis results in a lower NCP amount under Petitioners' proposed methodology only because EPA assumes the cost of an SCR

---

[3] EPA points out that in the Phase VI Rule, EPA set the upper limit as higher than the previous standard due to changes in other emissions standards making the Phase VI Rule's standard more difficult to achieve. EPA Br. 52 n.11. But that supports our argument: In the past, EPA's formula always captured the full costs of compliance. Opening Br. 44, 46-47.

24

system scales precisely with the amount of emissions reduced.  *See* J.A. 186 [Final TSD 61].  But SCR hardware does not scale in that way; the cost of the base SCR system remains substantial and largely the same whether emissions are being reduced from 1.2 g/bhp-hr to 0.2 g/bhp-hr or from 0.5 g/bhp-hr to 0.2 g/bhp-hr. *Compare* J.A. 186 [Final TSD 61] (hardware costs based on reduction from 1.2 g/bhp-hr to 0.2 g/bhp-hr are $5,671), *with* J.A. 190 [Final TSD 65] (hardware costs based on reduction from 0.5 g/bhp-hr to 0.2 g/bhp-hr are $4,105).

Second, EPA's alternative analysis gives Navistar credit for the significant fuel savings associated with SCR.  *See* J.A. 8 [77 FR 4743].  But EPA had never before subtracted the benefits of the complying emissions strategy from the NCP amount.  *See* J.A. 224-226 [DTNA cmt. 13-15].  And that includes benefits attributable to increased fuel efficiency.  *See* J.A. 225 [DTNA cmt. 14] (citing EPA, Development of Non-Conformance Penalty Rates for 1991 and Later Model Year Heavy-Duty and Light-Duty Diesel Truck Standards 21-22 (Mar. 9, 1990)). EPA offered little reason to deviate from that past practice here.  In its response to comments, EPA justified subtracting the fuel savings from SCR because EPA believed it would be unfair to consider the additional cost of diesel exhaust fluid to operators without also considering the cost savings associated with reduced fuel consumption.  J.A. 87-88 [Comment Response 49-50].

Even if considering fluid consumption generally was appropriate, it was inappropriate to allow fuel savings to reduce the final NCP beyond netting out the cost of diesel exhaust fluid. That, after all, punishes compliant manufacturers for developing a compliant emissions-control system that benefits users overall. And EPA had previously taken the position that "[t]he statute does *not* require that we establish an NCP which removes any disadvantage to the non-complying manufacturer." J.A. 224 [DTNA cmt. 13] (quoting EPA, Non-Conformance Penalties for 2004 and Later Model Year Emission Standards for Heavy-Duty Diesel Engines and Heavy-Duty Diesel Vehicles: Response to Comments 18 (Aug. 2002)).

Once these factors are properly taken into account, EPA's supposedly lower NCP disappears. If EPA did not use an inaccurate "scaling factor" and excluded net fuel savings, the end NCP—using EPA's figures—would have been $6,990. *See* J.A. 186 [Final TSD 61] (sum the figures in the second column of Table B-5). And even though that figure is thousands less than Petitioners argued was appropriate in their comments, Opening Br. 20, it is still approximately $3,200 more than the NCP in the Final Rule.

## IV.   THIS COURT SHOULD VACATE THE FINAL RULE.

EPA and Navistar argue that in the event this Court finds fault with the notice EPA gave, the correct remedy would be a remand without vacatur. EPA Br.

26

33; Navistar Br. 32-35. Not so. To begin with, the problems with the Final Rule run deeper than mere lack of notice and comment. The rule also is substantively flawed. *Supra* 19-26. That is significant because, if this Court decides the case on notice-and-comment alone, "leaving the [Final Rule] in place during remand would ignore petitioners' potentially meritorious [substantive] challenges." *Cement Kiln Recycling Coal.* v. *EPA*, 255 F.3d 855, 872 (D.C. Cir. 2001).

But even limited to the flaws in notice and comment, this Court should follow its ordinary practice of vacating rules found to be arbitrary, capricious, or contrary to law. *See Nat'l Mining Ass'n* v. *U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998) (" 'When a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated * * *.' ") (citation omitted). EPA certainly cannot muster much enthusiasm for suggesting that this Court deviate from that course, since it dedicates just a single sentence and citation to the question of remedy. EPA Br. 33. But even that is a tad surprising, given that EPA's counsel admitted at oral argument in *Mack Trucks* that the correct remedy for a lack of notice and comment there "would be to vacate the rule." *Mack Trucks* Oral Arg. Tr. 21. EPA never explains how the notice-and-comment problems in this case are different.

Navistar's argument, though slightly longer, fares no better. As Navistar notes, in weighing vacatur versus remand only, this Court considers "the

seriousness of the * * * deficiencies (and thus the extent of doubt whether the agency chose correctly) and the disruptive consequences of an interim change that may be itself changed." *Allied-Signal, Inc.* v. *NRC*, 988 F.2d 146, 150-151 (D.C. Cir. 1993). The deficiencies here are too serious to warrant remand only. As this Court has held, "[f]ailure to provide the required notice and invite public comment * * * is a fundamental flaw that 'normally' requires vacatur of the rule." *Heartland Reg'l Med. Ctr.* v. *Sebelius*, 566 F.3d 193, 199 (D.C. Cir. 2009) (citation omitted). Moreover, EPA already has had two opportunities—in the proposed Final Rule and on remand after *Mack Trucks*—to announce an intention to revise the substantial-work regulation and justify its new approach. It has not done so. EPA's track record militates against this Court concluding that the third time will be the charm. *See Fox Television Stations, Inc.* v. *FCC*, 280 F.3d 1027, 1053 (D.C. Cir. 2002) (vacating rule where agency's defense suggested the rule was a "hopeless cause").

Regardless of whether EPA can come up on remand with a rationale that would survive judicial scrutiny, vacatur poses no significant disruption that would warrant remand alone. Remand without vacatur is for the benefit of agencies and industries, not individual regulated entities. *See, e.g.*, *Allied-Signal*, 988 F.2d at 151 (declining to vacate rule because *agency* would suffer significant financial loss it could not recoup after remand); *EME Homer City Generation, L.P.* v. *EPA*, 696

F.3d 7, 37-38 (D.C. Cir. 2012) (remand without vacatur was appropriate where vacatur would " 'temporarily defeat the enhanced protection of the environmental values covered by the EPA rule at issue.' ") (citation omitted).  Although denying Navistar the benefit of the Final Rule while EPA conducts remand proceedings may impose some hardship on Navistar, "the same could be said for any manufacturer facing a standard with which its product does not comply." *Mack Trucks*, 682 F.3d at 93.  Indeed, this Court in *Mack Trucks* refused to find that "rescu[ing] [Navistar]  from the folly of its own choices" constituted "good cause" for bypassing notice and comment under the APA.  *Id*.  And it did so even though Navistar argued, as it does here, that some of its customers may be affected by a lack of inventory were EPA's rule vacated.  *Id*. at 94.  Just as those idiosyncratic harms were not enough to justify "good cause" in *Mack Trucks*, neither are they such "a great loss" to the truck-buying public to warrant remand without vacatur here.  *See Fox Television Stations*, 280 F.3d at 1049.  It certainly does not outweigh the harm to Petitioners, who will have to continue to compete with engines that should not have been on the market in the first place.  This Court should vacate the Final Rule.

29

# CONCLUSION

For the foregoing reasons and those in the opening brief, the petition for

review should be granted and the Final Rule vacated.

Respectfully submitted,

/s/ Julie R. Domike

JULIE R. DOMIKE
WILLIAM F. LANE
ALEC C. ZACAROLI
KILPATRICK TOWNSEND & STOCKTON
   LLP
Suite 900
607 Fourteenth Street, N.W.
Washington, D.C. 20005
(202) 824-1418

*Counsel for Mack Trucks, Inc. and Volvo Group North America, LLC*

/s/ Christopher T. Handman

CHRISTOPHER T. HANDMAN
R. LATANE MONTAGUE
SEAN MAROTTA
KATHRYN L. LANNON
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5719

*Counsel for Daimler Trucks North America LLC and Detroit Diesel Corporation*

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed R. App. P. 32(a)(7)(C) and Circuit Rule 32(a), I hereby certify that the foregoing brief was produced using the Times New Roman 14-point typeface and contains 6,973 words.

/s/ Christopher T. Handman
Christopher T. Handman

**CERTIFICATE OF SERVICE**

I certify that on June 11, 2013 the foregoing Final Reply Brief For Petitioners was electronically filed through this Court's CM/ECF system, which will send a notice of filing to all registered users. I also certify that I caused to be delivered to the Court by messenger eight copies of the brief, pursuant to Circuit Rule 31(b).

/s/ Christopher T. Handman
Christopher T. Handman